In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00103-CR
______________________________


CONRAD KEITH RAMOS, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the Fifth Judicial District Court
Cass County, Texas
Trial Court No. 2004F00202


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â Â Conrad Keith Ramos, having been convicted in 1988 of indecency with a child,


 was
therefore a sex offender and, as such, was obligated to register with the local law enforcement
authority in any jurisdiction in which he resided or intended to reside for more than seven days.


 He
was also obligated to update that registration with the local law enforcement authority annually,
within thirty days before and thirty days after his birthday.


 According to the State's evidence,
Ramos failed to make the annual registration for 2002 within thirty days of his AugustÂ 2nd birthday.
Â Â Â Â Â Â Â Â Â Â Â Â On appeal, Ramos contends his conviction and sentence


 are not supported by legally or
factually sufficient evidence. We disagree.
The Evidence Is Legally Sufficient
Â Â Â Â Â Â Â Â Â Â Â Â Challenging the legal sufficiency of the evidence, Ramos argues that the State charged him
with failure to register initially on establishing his current residence in Cass County, but that the
State's proof addressed his failure to renew his registration on or about August 2, 2002. According
to the record, Ramos' birthday was August 2nd. Therefore, Ramos was obligated to register
annually, within thirty days before or after each 2nd day of August, with Connie Wise, who
monitored sexual offender registrations for the sheriff's office of Cass County, Texas, the county of
Ramos' residence. Ramos had properly registered with Wise in 1999, 2000, and 2001. In March and
June 2002, Ramos properly registered changes of address with Wise. But, according to evidence
presented by the State, Ramos failed to register with Wise within thirty days before or after August
2, 2002. 
Â Â Â Â Â Â Â Â Â Â Â Â In reviewing the legal sufficiency of the evidence, we examine the relevant evidence in the
light most favorable to the verdict and determine whether any rational trier of fact could have found
the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d 1, 7
(Tex. Crim. App. 2000). When legal sufficiency of the evidence is challenged based on a variance
between the charge and the proof, the challenge here, we measure the sufficiency of the evidence
against the indictment and the court's charge to the jury. Fisher v. State, 887 S.W.2d 49, 53 (Tex.
Crim. App. 1994) (op. on reh'g); Smith v. State, 135 S.W.3d 259, 261â62 (Tex. App.âTexarkana
2004, no pet.); Cates v. State, 72 S.W.3d 681, 688 (Tex. App.âTyler 2001, no pet.). We review the
variance for materiality, because only a "material" variance will render the evidence insufficient. 
See Gollihar v. State, 46 S.W.3d 243, 257 (Tex. Crim. App. 2001); Smith, 135 S.W.3d at 262. That
"materiality" inquiry requires us to determine whether the variance deprived Ramos of notice of the
charges or whether the variance subjects him to the risk of later being prosecuted for the same
offense. Fuller v. State, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002); Smith, 135 S.W.3d at 262; see
Gollihar, 46 S.W.3d at 257. This variance was not material; therefore, the evidence was not legally
insufficient because of that variance.
Â Â Â Â Â Â Â Â Â Â Â Â The indictment alleged that,
on or about the 2nd day of August, A.D. 2002, . . . CONRAD KEITH RAMOS .Â .Â . 
while being a person required to register with the local law enforcement authority in
the municipality where the defendant resided or intended to reside for more than
seven days, to-wit: Marietta, Texas, because of a reportable conviction for Indecency
with a Child, intentionally, knowingly, or recklessly fail[ed] to register with the local
law enforcement authority in said municipality, to-wit: Cass County Sheriff's
Department, Cass County, Texas.
The indictment also referenced as the relevant statute Texas Code of Criminal Procedure Article



"62.10(a)(b)(2)." At the time, Article 62.10(a)


 of the Texas Code of Criminal Procedure provided
that a person who is required to register as a sex offender and who violates "any requirement of this
chapter"âChapter 62, "Sex Offender Registration Program"âcommits an offense. Article
62.10(b)(2) provided the grade of the offense, which is not at issue in this appeal. Therefore, in
citing to the statute, the indictment failed to explicitly point to either a violation of the obligation to
register initially or a violation of the obligation to register annually.
Â Â Â Â Â Â Â Â Â Â Â Â While the indictment could be read as charging a failure to register initially on establishing
his residence, it merely charges Ramos with failing to register on or about August 2, 2002. And,
from the record, the significance of August 2, 2002, is no mystery. It was his birthday, and therefore
the date marking his obligation to register annually. The charge to the jury essentially tracked the
indictment's language.
Â Â Â Â Â Â Â Â Â Â Â Â Ramos does not claim surprise based on the variance, and in fact defended at trial on the
basis that his failure to register on or about August 2, 2002, was justifiably based on permission not
to report. There was no surprise to Ramos.
Â Â Â Â Â Â Â Â Â Â Â Â Ray Copeland, investigator for the Cass County Sheriff's Office, interviewed Ramos about
Ramos' failure to register. Ramos gave a written statement, which was introduced into evidence. 
In the statement, Ramos says that a "blue warrant" alleging a parole violation had issued for him
because Ramos was arrested for driving while intoxicated (DWI) in Mount Pleasant, Texas. In his
statement, Ramos said that he found out about this warrant on "7-02," which caused him not to report
to the sheriff's office on "8-02-02." Knowing he would be arrested, Ramos wrote, "I just left and
worked else where [sic] then moved back here to Grand Saline, TX[,] worked for 6 mths [sic] and
waited for Cass Co. or who ever to come get me. . . . "


 Ramos concludes the written statement by
saying that the blue warrant is the reason he did not register on his birthday, August 2, 2002, as he
had done "every year." 
Â Â Â Â Â Â Â Â Â Â Â Â Craig Biggar, Ramos' parole officer, testified that, when Biggar took over supervision of
Ramos' parole, Biggar was told that Ramos had a pending DWI charge. Biggar's predecessor and
supervisor discussed the matter and "had decided to let Mr. Ramos go to court before they did
anything about it." Biggar was told of this arrangement when he took over supervision of Ramos'
parole. In July 2002, Biggar's supervisor changed. The new supervisor instructed Biggar to obtain
a warrant for Ramos. Biggar spoke to Ramos in July 2002, and advised Ramos of the blue warrant. 
According to Biggar, Ramos promised to turn himself in to authorities in August, when he had an
appearance in court, presumably for the DWI. Biggar said to Ramos, "Okay, that's fine." Ramos did
not present himself to any court during August and was listed as an absconder with the parole
authorities. Biggar stated that he never told Ramos that Ramos did not have to register as a sex
offender. 
Â Â Â Â Â Â Â Â Â Â Â Â From Ramos' written statement it is clear he (a) knew he was obligated to report thirty days
before or after August 2, 2002, and (b) consciously chose not to. Wise, the officer in charge of sex-offender registrations for Ramos' jurisdiction, testified Ramos had regularly reported for three years
before the date in question, including two registrations of address changes within about six months
before August 2002.
Â Â Â Â Â Â Â Â Â Â Â Â Ramos was obligated to register with local law enforcement officials, as a result of his final
conviction for indecency with a child. See Tex. Code Crim. Proc. Ann. art.Â 62.001(5)(A) (Vernon
Supp. 2005). He was required to report to the appropriate local law enforcement agent within thirty
days of his birthday each year. See Tex. Code Crim. Proc. Ann. art. 62.058(a). A rational jury
could have found, beyond a reasonable doubt, the elements of failure to register annually as a sex
offender. And there was no material variance between the indictment and the proof. The evidence
is legally sufficient.
The Evidence Is Factually Sufficient
Â Â Â Â Â Â Â Â Â Â Â Â Ramos next challenges the factual sufficiency of the evidence. In our review of the factual
sufficiency of the evidence concerning matters where the State has the ultimate burden of proof or
persuasion, we employ the standards set forth in Zuniga v. State, 144 S.W.3d 477, 484 (Tex. Crim.
App. 2004). We view all the evidence in a neutral light and determine whether the evidence
supporting the verdict is too weak to support the finding of guilt beyond a reasonable doubt or if
evidence contrary to the verdict is strong enough that the beyond-a-reasonable-doubt standard could
not have been met. Threadgill v. State, 146 S.W.3d 654, 664 (Tex. Crim. App. 2004) (citing Zuniga,
144 S.W.3d at 486). If the evidence is factually insufficient, we must reverse the judgment and
remand for a new trial. Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996).
Â Â Â Â Â Â Â Â Â Â Â Â In his case-in-chief, Ramos presented only one witness, his former parole officer, who
supervised Ramos in 1999. Officer David Montgomery testified that, when he supervised Ramos,
Ramos had complied with the terms of his parole, including timely reporting and wearing a leg
monitor. That evidence does not contradict the evidence of the violation here.
Â Â Â Â Â Â Â Â Â Â Â Â In challenging the factual sufficiency of the evidence, Ramos contends that Biggar gave his
permission to Ramos to turn himself in in August and that, therefore, Ramos did not have the
necessary intentional, knowing, or reckless state of mind in failing to register. Ramos offers no
authority or analysis of this point and does not argue mistake of law or fact. Regardless, the State
proffered testimony that, in 2002, Ramos did not report to the proper authorities within thirty days
of his birthday. As stated above, Ramos' written statement demonstrates he was obligated to report. 
Whether he thought he had Biggar's permission to delay his annual report is not relevant to the
inquiry. And there was no evidence which would have precluded a finding of guilt beyond a
reasonable doubt. The evidence is factually sufficient to demonstrate that Ramos intentionally,
knowingly, or recklessly failed to register within thirty days of August 2, 2002.
Â Â Â Â Â Â Â Â Â Â Â Â We affirm the trial court's judgment.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Josh R. Morriss, III
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Date Submitted:Â Â Â Â Â Â Â Â Â Â March 27, 2006
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â May 4, 2006

Do Not Publish



sans-serif";
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;}
table.MsoTableGrid
 {mso-style-name:"Table Grid";
 mso-tstyle-rowband-size:0;
 mso-tstyle-colband-size:0;
 mso-style-priority:59;
 mso-style-unhide:no;
 border:solid black 1.0pt;
 mso-border-themecolor:text1;
 mso-border-alt:solid black .5pt;
 mso-border-themecolor:text1;
 mso-padding-alt:0in 5.4pt 0in 5.4pt;
 mso-border-insideh:.5pt solid black;
 mso-border-insideh-themecolor:text1;
 mso-border-insidev:.5pt solid black;
 mso-border-insidev-themecolor:text1;
 mso-para-margin:0in;
 mso-para-margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Calibri","sans-serif";
 mso-ascii-font-family:Calibri;
 mso-ascii-theme-font:minor-latin;
 mso-fareast-font-family:Calibri;
 mso-fareast-theme-font:minor-latin;
 mso-hansi-font-family:Calibri;
 mso-hansi-theme-font:minor-latin;}











 
 
 
 
 
 
 




Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

Â 

 In
The

   Court
of Appeals

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Sixth
Appellate District of Texas at Texarkana

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  No. 06-10-00221-CR

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  ______________________________

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  BROCK JERNIGAN,
Appellant

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  V.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  THE STATE OF TEXAS, Appellee

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 


Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  On Appeal from the 5th Judicial District Court

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Bowie County, Texas

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Trial Court
No. 05F0226-005

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Before Morriss, C.J.,
Carter and Moseley, JJ.

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Memorandum Opinion by Justice Carter

Â 

Â 








Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  MEMORANDUM OPINION

Â 

Â Â Â Â Â Â Â Â Â Â Â  Brock
Jernigan was placed on deferred adjudication community supervision for five
years after pleading guilty to the offense of evading arrest with a
vehicle.Â  Capias issued prior to the
expiration period pursuant to the StateÂs motion to adjudicate guilt based upon
an alleged ÂBattery First DegreeÂ committed by Jernigan in Arkansas.Â  The trial court found Jernigan failed to
abide by the condition of community supervision that he Âcommit no offense
against the law of this or any State,Â adjudicated him guilty of evading arrest
with a vehicle, and sentenced him to two yearsÂ confinement.Â  Jernigan appeals the judgment adjudicating
guilt on grounds that the trial court erred in: Â (1) denying a motion to suppress his
confession in the Arkansas case; (2) not awarding Jernigan Âhis back timeÂ; and
(3) denying Jernigan an appellate bond.Â 
We affirm the trial courtÂs judgment because: Â (1) we find that the trial court properly
overruled the motion to suppress; (2) the record does not reveal the amount of
time Jernigan spent in jail entitling him to the specific credit he seeks; and
(3) we lack jurisdiction over the order denying the appeal bond. 

I. Â Â Â Â Â Â Â  JerniganÂs Motion to Suppress Was
Properly Overruled

Â 

Â Â Â Â Â Â Â Â Â Â Â  The
State called Officer Wayne Easley with the Texarkana, Arkansas Police
Department, who testified that JerniganÂs fifteen-month-old stepdaughter was
admitted to a Little Rock Hospital for Âmassive head injuries.Â  The back of her skull was busted and caved
in.ÂÂ  Easley brought Jernigan in for
questioning.Â  After advising him of his
rights, Easley obtained JerniganÂs signature stating that he understood the
Miranda[1]
warnings that were issued and that he wished to waive his rights.[2]Â  

Â Â Â Â Â Â Â Â Â Â Â  The State
sought to introduce JerniganÂs confession during the interrogation.Â  Contending Âthat in the middle of the
interview [Jernigan] invoked his right to counsel,Â JerniganÂs counsel asked Âthat
any statement that Brock Jernigan made that day be suppressed.ÂÂ  CounselÂs voir dire examination of Easley
produced the following transcript:

Â Â Â Â Â Â Â Â Â Â Â  QÂ Â Â Â Â Â Â Â  At some point in the interview, did Mr.
Jernigan say, ÂDo I need to get a lawyer?Â

Â 

Â Â Â Â Â Â Â Â Â Â Â  AÂ Â Â Â Â Â Â Â  He asked, ÂDo I need a lawyer?Â

Â 

Â Â Â Â Â Â Â Â Â Â Â  QÂ Â Â Â Â Â Â Â  Okay.Â 
And what was your response?

Â 

Â Â Â Â Â Â Â Â Â Â Â  A
Â Â Â Â Â Â Â  I said, ÂItÂs up to you.Â  If you want a lawyer, you can have one.Â  YouÂve got the right to talk to me and youÂve
got the right to stop talking to me.Â

Â 

Â Â Â Â Â Â Â Â Â Â Â  QÂ Â Â Â Â Â Â Â  Okay.Â 
And then, along these same lines, did he say, ÂCan I talk to one?Â

Â 

Â Â Â Â Â Â Â Â Â Â Â  AÂ Â Â Â Â Â Â Â  Yes.Â 
And we told him, ÂYes, he can.Â  He
had the right to stop.Â  He had the right
to stop talking to us at any time.Â  It
was his choice.Â  I explained the Miranda
warning as we read it to him at the beginning of the deal. . . . he told me he
wanted to talk to me, heÂs continued to talk.Â 
He never did break down from not talking or in any way indicate that he
did not want to talk to me.Â

Â 

Â Â Â Â Â Â Â Â Â Â Â  We review a
trial courtÂs decision to admit or exclude evidence for an abuse of discretion.
De La Paz v. State, 279 S.W.3d 336,
343 (Tex. Crim. App. 2009); McDonald v.
State, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). Â Under this standard, an appellate court should
not disturb the trial courtÂs decision if the ruling was within the zone of
reasonable disagreement. Â De La Paz, 279 S.W.3d at 343Â44; Bigon v. State, 252 S.W.3d 360, 367
(Tex. Crim. App. 2008).Â  If a suspect
requests counsel at any time during a custodial interview, Âhe is not subject
to further questioning until a lawyer has been made available or the suspect
himself reinitiates conversation.Â Â Davis v. United States, 512 U.S. 452,
459 (1994).Â  This secondary Miranda right to counsel is Âdesigned to
prevent police from badgering a defendant into waiving his previously asserted Miranda rights.Â Â Id. at
458. Â ÂA suspect who has invoked the
right to counsel cannot be questioned regarding any offense unless an attorney
is actually present.ÂÂ  Id.Â  However,
in the context of invoking the Miranda
right to counsel, a suspect must do so Âunambiguously.Â Â Berghuis v. Thompkins, __U.S.__,
130 S.Ct. 2250, 2259Â60 (2010).Â  Â[I]f a
suspect makes a reference to an attorney that is ambiguous or equivocal in that
a reasonable officer in light of the circumstances would have understood only
that the suspect might be invoking
the right to counsel,Â the police are not required to end the interrogation, or
ask questions to clarify whether the accused wants to invoke his or her Miranda rights. Â Davis,
512 U.S. at 459.

Â Â Â Â Â Â Â Â Â Â Â  The trial
court reviewed the following conversation between Jernigan and the
interrogating officers which transpired after Jernigan was asked to take a
polygraph examination:

Â Â Â Â Â Â Â Â Â Â Â  BJ[3]:Â Â Â Â Â  Do I need to get a lawyer? Â I mean?

Â 

Â Â Â Â Â Â Â Â Â Â Â  WE[4]:Â Â Â  Well that is youÂre [sic] choice.

Â 

Â Â Â Â Â Â Â Â Â Â Â  BJ: Â Â Â Â  I
mean I donÂt know. 

Â 

Â Â Â Â Â Â Â Â Â Â Â  WE:Â 
Â  That is youÂre [sic] choice; you
got the right as we read in these right[s] you got the right to stop this thing
at any time.Â  You understand?

Â 

Â Â Â Â Â Â Â Â Â Â Â  BJ:Â Â Â Â Â Â  I
mean I am telling you the truth, I donÂt think I need one but, I mean. 

Â 

Â Â Â Â Â Â Â Â Â Â Â  CL[5]:Â Â Â Â  Okay you donÂt need one then is that what
you think?

Â 

Â Â Â Â Â Â Â Â Â Â Â  WE:Â Â Â Â  Yeah,
it is totally up to you. 

Â 

Â Â Â Â Â Â Â Â Â Â Â  BJ:Â Â Â Â Â Â  Can
I talk to one first?

Â 

Â Â Â Â Â Â Â Â Â Â Â  WE:Â Â Â Â  First
before what?

Â 

Â Â Â Â Â Â Â Â Â Â Â  BJ: Â Â Â Â  Before
anything else happens I mean, I am telling yall [sic] the truth I am just
scared.Â  I am real scared right now and I
have been the whole time. 

Â 

Â Â Â Â Â Â Â Â Â Â Â  WE: Â Â  So
you donÂt want to talk to us no more or you do want to talk to us?

Â 

Â Â Â Â Â Â Â Â Â Â Â  CL:Â Â Â Â Â  Are
you talking about the polygraph?

Â 

Â Â Â Â Â Â Â Â Â Â Â  BJ: Â Â Â Â  I
donÂt, I donÂt know. . . . Just in general right now, I mean I am scared I donÂt.Â  I didnÂt do it on purpose.Â  I didnÂt do it on purpose, I am scared right
now. 

Â Â Â Â Â Â Â Â Â Â Â  

Jernigan proceeded with the interview and confessed to the
details of the battery.Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â  In Davis the defendant stated, ÂMaybe I
should talk to a lawyer,Â and the United States Supreme Court found that was
not an unambiguous request for counsel. Â Id. at 462.Â Â  The Texas Court of Criminal Appeals has
likewise required an unambiguous assertion of the right to counsel.Â  Davis
v. State, 313 S.W.3d 317 (Tex. Crim. App. 2010) (defendantÂs statement
during police interview, ÂI should have an attorneyÂ did not expressly invoke
the right to counsel).Â  Here, the trial
court found that there was Ânot a clear, unambiguous invocation of the right to
counsel.ÂÂ  WeÂ  agree with the trial courtÂs ruling. 

Â Â Â Â Â Â Â Â Â Â Â  Â The transcript of the interrogation reveals
that Jernigan first asked Âdo I need to get a lawyer, I mean?ÂÂ  The officers explained that was his right and
that he could Âstop this thing at any time.ÂÂ 
Jernigan then stated, ÂI donÂt think I need one, but, I mean,Â and
finally asked, ÂCan I talk to one first?ÂÂ 
The first statement merely asked about his right to counsel or asked the
officers their opinion on whether he should obtain counsel, and thereafter Jernigan
stated he did not think he needed counsel.Â 
Finally, he asked if he Âcould talk to one [lawyer] first.ÂÂ  Jernigan never expressly stated that he
wanted a lawyer.Â  We are to evaluate
whether JerniganÂs right to counsel was invoked based on the totality of the
circumstances surrounding the statement.Â 
Id. at 339.Â  Based on precedent from the United States
Supreme Court and the Texas Court of Criminal Appeals, we find that Jernigan
did not clearly and unambiguously invoke his right to counsel and that a
reasonable officer in light of the circumstances would have understood only
that Jernigan Âmight be invoking the
right to counsel.Â Â Davis, 512 U.S. at 459. Â Because
Jernigan did not unambiguously request counsel, the trial court properly
overruled the motion to suppress. 

Â Â Â Â Â Â Â Â Â Â Â  We overrule
JerniganÂs first point of error.

Â  

II. Â Â Â Â Â  The Record Does Not Support JerniganÂs
Claim to Additional Credit 

Â 

Â Â Â Â Â Â Â Â Â Â Â  The trial court granted Jernigan
Âcredit for any time that heÂs served since his date of arrest on the motion to
revoke probation in this matter.ÂÂ 
Jernigan claims that the trial court erred when it only gave him a
twenty-six-day credit in the final written judgment.Â  He complains that the officerÂs return on the
capias was executed on September 16, 2010, that the trial was held Âon or about
November 10, 2010,Â and that therefore he should be entitled to a credit of
fifty-seven days.Â  The record contained
an Âorder modifying bond and conditions of bondÂ signed on October 13,
2010.Â  Aside from these documents, there
is no other indication from the record as to the actual number of days Jernigan
spent in jail.Â  

Â Â Â Â Â Â Â Â Â Â Â  It was
JerniganÂs burden to bring forward a record on appeal sufficient to show that
the trial court erred in assessing the credit to be applied.Â  See
Amador v. State, 221 S.W.3d 666, 675 (Tex. Crim. App. 2007); Guajardo v. State, 109 S.W.3d 456, 462
n.17 (Tex. Crim. App. 2003) (ÂIt is . . . the appealing partyÂs burden to
ensure that the record on appeal is sufficient to resolve the issue he
presents.Â). Â Recognizing this, Jernigan
asks this Court to 

order
the trial court to require the District Attorney for Bowie County, Texas, to
present it with the full and correct assessment of all time Defendant has
served in this case, and thereafter ensure that the trial court judgment award
[sic] proper credit for all prior time incarcerated as presented therein.

Â 

Â Â Â Â Â Â Â Â Â Â Â  We decline
to issue this request for production of documents.Â  Since the record does not support JerniganÂs
claim to relief requested, his second point of error is overruled.[6]

III. Â Â Â Â  Jernigan Failed to Separately Appeal Denial
of Appeal Bond

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â The trial court entered an order denying
JerniganÂs motion for the court to set bail pending appeal on May 11,
2011.Â  Article 44.04(g) of the Texas Code
of Criminal Procedure, entitled ÂBond pending appeal,Â provides that Â[t]he
right of appeal to the Court of Appeals of this state is expressly accorded the
defendant for review of any judgment or order made hereunder, and said appeal
shall be given preference by the appellate court.ÂÂ  (West 2006).Â 
This statute Âprovides a separate, expedited appeal of such orders.Â Ortiz v. State, 299 S.W.3d 930, 932
(Tex. App.ÂAmarillo 2009, no pet.).Â 
Because an Article 44.04 appeal is separate Âfrom the appeal of the
conviction and punishment,Â Âit must be perfected by a separate notice of
appeal.ÂÂ  Davis v. State, 71 S.W.3d 844, 845 (Tex. App.ÂTexarkana 2002, no
pet.); Ortiz, 299 S.W.3d at 933. 

Â Â Â Â Â Â Â Â Â Â Â  Â ÂAn appellate court lacks jurisdiction to
consider an appeal absent a timely filed notice of appeal.ÂÂ  Ortiz,
299 S.W.3d at 933. Â Here, Jernigan failed to separately appeal
from this order denying appellate bond.Â 
Therefore, we lack jurisdiction over JerniganÂs last point of error,
which we dismiss.Â  

IV. Â Â Â Â  Conclusion 

Â 

Â Â Â Â Â Â Â Â Â Â Â  We affirm the trial courtÂs
judgment. 

Â 

Â 

Â 

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Jack
Carter

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Justice

Â 

Date Submitted:Â Â Â Â Â Â Â Â Â  October
18, 2011Â Â Â Â Â Â Â  

Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â  October
19, 2011

Â 

Do Not PublishÂ Â Â Â Â Â Â Â Â Â  

Â 

Â 











[1]Miranda v. Arizona, 384 U.S. 436 (1966).


Â 





[2]It
was not asserted that the Miranda
warnings were improper or that Jernigan did not understand them and thereafter
voluntarily consented to an interrogation.Â 






[3]Refers
to Jernigan.





[4]Refers
to Easley.





[5]Refers
to Detective Lee.Â  LeeÂs first name is
not mentioned in the record. 





[6]ÂPre-sentence
time credit claims typically must be raised by a motion for judgment nunc pro tunc filed with the clerk of
the convicting trial court.ÂÂ  Ex parte Florence, 319 S.W.3d 695, 696
(Tex. Crim. App. 2010).